**SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES, Respondent,**

v.

**Ngoc TRAN and Thomas Nguyen, Defendants,**

Of Whom Ngoc Tran is the Appellant.

In the interest of a minor child under the age of eighteen.

**Appellate Case No. 2014–001134
Opinion No. 5445**

Court of Appeals of South Carolina.

Heard September 8, 2016
Filed October 10, 2016

Kimberly Yancey Brooks, of Kimberly Y. Brooks, Attorney at Law, of Greenville, for Appellant.

Kathleen J. Hodges, of South Carolina Department of Social Services, of Anderson, for Respondent.

Brittany Dreher Senerius, of Senerius & Tye, Attorneys at Law, of Anderson, for the Guardian ad Litem.

PER CURIAM:

Ngoc Tran (Mother), a Georgia resident, appeals the family court's order terminating her parental rights to her minor daughter (Child). On appeal, Mother argues the family court (1) lacked subject matter jurisdiction under the Uniform Child–Custody Jurisdiction and Enforcement Act (UCCJEA) and (2) erred in finding clear and convincing evidence supported two statutory grounds for termination of parental rights (TPR). Because we find the Department of Social Services (DSS) failed to establish subject matter jurisdiction, we vacate the underlying removal order and TPR order and remand for additional findings.

**FACTS/PROCEDURAL HISTORY**

This case began as a removal action on May 21, 2012, when Mother—who was traveling through South Carolina—was admitted to the hospital due to an "altered mental status." DSS received allegations that Mother "was found sitting in the middle of the road and was not very responsive," Child was with her, and Mother could not identify a family member to pick up Child. Mother was still hospitalized when the family court held a probable cause hearing on May 24, 2012; the family court determined probable cause existed to remove Child and granted DSS custody of Child "[p]ending further orders."

According to a placement plan prepared by DSS, Mother previously had an "altered mental episode" in Georgia and left Child unattended; Mother had an "extensive history" with the Department of Families and Children in Georgia; Child had been placed in foster care in Georgia; and there were "allega-

tions of criminal domestic violence in Harrisburg, Pennsylvania with [Mother's] husband." In a December 3, 2012 merits removal order, the family court found Mother placed Child at a substantial risk of harm of physical neglect and returning Child to Mother's home would place Child at an unreasonable risk of harm. The family court granted DSS custody of Child and ordered Mother to complete a placement plan.

On March 6, 2014, the family court held a TPR hearing. Mother was not present, and the family court denied her request for a continuance. At the hearing, a DSS foster care worker testified Mother was a resident of Cobb County, Georgia; Father's last-known address was in Philadelphia, Pennsylvania; and Child was born in Pennsylvania. Following testimony, the family court found clear and convincing evidence showed Mother failed to remedy the conditions causing removal, Child had been in foster care for fifteen of the most previous twenty-two months, and TPR was in Child's best interest.

Mother filed a motion for reconsideration alleging she was a survivor of domestic abuse and had a pending case in Philadelphia County, Pennsylvania. The family court held a hearing on Mother's motion. During the hearing, Mother asserted "there was a case in Philadelphia in 2005 that she believed Child was going to be required to go back to." The family court asked DSS whether it had investigated the allegations of domestic violence in Pennsylvania. Counsel for DSS replied,

[B]ased on 2005 we did not do an independent investigation early on in the case in terms of the Philadelphia situation. I can tell the [c]ourt that we have subsequently checked with Philadelphia to find out what the status of that case was. They can find nothing on their records. They're going back and checking. It's, I guess, nine years since that case would have happened.

So at this point we don't have any, either verification or proof, you know, or disposition of that case.

Counsel for DSS stated records from Georgia's Department of Families and Children noted allegations of domestic abuse, but she believed that "referred back to the Philadelphia records." The family court acknowledged Mother sent letters to the court indicating she had a case in Philadelphia "scheduled for

a hearing in July of this year"; it asked Mother's counsel whether she had anything to support that. Mother's counsel replied, "I don't, Your Honor. I mean, I was in this case to represent her in this case. I don't really know anything about the Philadelphia case nor did I investigate it." The family court then asked Mother whether she had any documents to support her allegation that she had an upcoming hearing scheduled in Pennsylvania; Mother submitted a document to the court. After reviewing the document, the family court replied, "Do you have something else? This looks like something she instituted through the Pennsylvania court system. I'm not sure. Do you have any further information?" Mother's counsel stated she did not.

Mother asserted she moved from Philadelphia to Georgia to escape domestic violence. She stated she had lived in Georgia for three years, and she and Child had not had any contact with Father since leaving Pennsylvania ten years prior.

The record on appeal contains two documents from a Pennsylvania court. The first document is a June 16, 2005 order from the Philadelphia County Family Court Division suspending Father's visitation with Child and scheduling a "protection from abuse hearing." The second document is a January 17, 2014 order from the Philadelphia County Family Court Division setting a custody hearing for July 16, 2014; Mother was the petitioner and Father was the Respondent.[1]

In its order denying Mother's motion for reconsideration, the family court found,

[Mother] claims that a court case is pending in Philadelphia, Pennsylvania that involves the issue of custody of the child. It appears from the evidence presented that [Mother] instituted an action seeking an Order of Custody against the child's father, who may be [Mother's] current or ex-husband. The pending court case in Philadelphia, Pennsylvania is not relevant to the issue of [TPR] in the instant case. Furthermore[,] it appears that the Pennsylvania Courts do not have jurisdiction over the matter of custody of this minor child. A merits hearing was held on the removal on October 25, 2012[,] pursuant to [section] 63-7-1660 [of the

---

1. This appears to be the document the family court reviewed at the reconsideration hearing.

South Carolina Code]. [M]other was properly served but did not appear. An Order for Removal arising from the merits hearing was filed on December 3, 2012. This was a final order, *Hooper v. Rockwell*, 334 S.C. 281, 513 S.E.2d 358 (1999), holding merits orders are final orders which must be timely appealed. [Mother] did not appeal the Removal order and therefore jurisdiction regarding the custody of [Child] vested in the State of South Carolina in 2012[,] and the Pennsylvania Courts are without jurisdiction to act regarding the custody of the minor child.

This appeal followed.

## LAW/ANALYSIS

■ Mother argues the family court lacked subject matter jurisdiction under the UCCJEA. She contends South Carolina was not Child's home state when this removal action began, and South Carolina only had emergency jurisdiction under section 63–15–336 of the South Carolina Code (2010). We agree.

■ In appeals from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011).

■ "Subject matter jurisdiction is 'the power to hear and determine cases of the general class to which the proceedings in question belong.'" *Dove v. Gold Kist, Inc.*, 314 S.C. 235, 237–38, 442 S.E.2d 598, 600 (1994) (quoting *Bank of Babylon v. Quirk*, 192 Conn. 447, 472 A.2d 21, 22 (1984)). A court without subject matter jurisdiction does not have authority to act. *Id.* at 238, 442 S.E.2d at 600. "A judgment of a court without subject-matter jurisdiction is void." *Coon v. Coon*, 364 S.C. 563, 566, 614 S.E.2d 616, 617 (2005).

■ "Lack of subject matter jurisdiction can be raised at any time, can be raised for the first time on appeal, and can be raised *sua sponte* by the court." *Badeaux v. Davis*, 337 S.C. 195, 205, 522 S.E.2d 835, 840 (Ct. App. 1999) (quoting *Lake v. Reeder Constr. Co.*, 330 S.C. 242, 248, 498 S.E.2d 650, 653 (Ct. App. 1998)). "Lack of subject matter jurisdiction may not be waived, even by consent of the [parties, and should be taken notice of by this [c]ourt." *Id.* "[I]t is the duty of this court to

take notice and determine if the [f]amily [c]ourt had proper jurisdiction for its actions." *Id.*

 "The [Parental Kidnapping Prevention Act (PKPA)[2]] and the UCCJEA govern subject matter jurisdiction in interstate custody disputes." *Anthony H. v. Matthew G.*, 397 S.C. 447, 451, 725 S.E.2d 132, 134 (Ct. App. 2012). "The PKPA is primarily concerned with when full faith and credit should be given to another [s]tate's custody determination." *Id.* (alteration by court) (quoting *Doe v. Baby Girl*, 376 S.C. 267, 278, 657 S.E.2d 455, 461 (2008)). "The UCCJEA's primary purpose is to provide uniformity of the law with respect to child custody decrees between courts in different states." *Id.* "[B]oth the PKPA and UCCJEA apply to TPR actions." *Id.*

 The UCCJEA, which has been adopted by South Carolina,[3] Georgia,[4] and Pennsylvania,[5] provides three basic ways a state can establish jurisdiction over a case involving child: a state can have jurisdiction to make an initial child custody determination, a state can have jurisdiction to modify a child custody determination made by another state, or a state can have temporary emergency jurisdiction. *See* S.C. Code Ann. § 63–15–330 (2010) (initial determination jurisdiction); S.C. Code Ann. § 63–15–334 (2010) (modification jurisdiction); S.C. Code Ann. § 63–15–336 (2010) (temporary emergency jurisdiction). After a state issues an initial child custody determination, it retains exclusive continuing jurisdiction over that child until either (1) a court of the issuing state determines the child and the child's parents no longer have a significant connection with the state and substantial evidence is no longer available in the state or (2) the issuing state or the other state determines the child and the child's parents no longer reside in the state. S.C. Code Ann. § 63–15–332 (2010). South Carolina courts defer "to the jurisdiction of the state that initially rules on a custody matter." *Russell v. Cox*, 383 S.C. 215, 219, 678 S.E.2d 460, 462–63 (Ct. App. 2009) (quoting

---

2. 28 U.S.C.A. § 1738(A) (2006).

3. S.C. Code Ann. §§ 63–15–300 to –394 (2010).

4. Ga. Code Ann. §§ 19–9–40 to –104 (2015 & Supp. 2016).

5. 23 Pa. Cons. Stat. §§ 5401–5482.

*Widdicombe v. Tucker-Cales,* 366 S.C. 75, 87, 620 S.E.2d 333, 339–40 (Ct. App. 2005), *vacated in part on other grounds,* 375 S.C. 427, 653 S.E.2d 276 (2007)).

> [A] South Carolina family court, except [as provided by section 63–15–336], may not modify a custody order issued by a court of another state unless a court of this State has jurisdiction to make an initial custody determination under the [UCCJEA] and (1) the court of the issuing state determines either that it no longer has continuing jurisdiction or that a court of this State would be a more convenient forum; *or* (2) either a South Carolina court or a court of the issuing state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the issuing state.

*Id.* at 217–18, 678 S.E.2d at 462 (emphasis added by court) (citing § 63–15–334).

Section 63–15–336 sets forth when South Carolina may exercise temporary emergency jurisdiction:

> (A) A court of this [s]tate has temporary emergency jurisdiction if the child is present in this [s]tate and the child has been abandoned or it is necessary in an emergency to protect the child because the child ... is subjected to or threatened with mistreatment or abuse.

> (B) If there is no previous child custody determination that is entitled to be enforced under this article and a child custody proceeding has not been commenced in a court of a state having jurisdiction under [s]ections 63–15–330 through 63–15–334, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under [s]ections 63–15–330 through 63–15–334. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under [s]ections 63–15–330 through 63–15–334, a child custody determination made under this section becomes a final determination, if it so provides and this [s]tate becomes the home state of the child.

> (C) If there is a previous child custody determination that is entitled to be enforced under this article, or a child custody proceeding has been commenced in a court of a state having jurisdiction under [s]ections 63–15–330 through 63–15–334,

any order issued by a court of this [s]tate under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under [s]ections 63–15–330 through 63–15–334. The order issued in this [s]tate remains in effect until an order is obtained from the other state within the period specified or the period expires. (D) A court of this [s]tate which has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under [s]ections 63–15–330 through 63–15–334, shall immediately communicate with the other court.

At the time of the removal, Mother and Child were traveling through South Carolina, and neither Mother, Father, nor Child had ever lived in this state. The evidence shows Georgia—not South Carolina—was Child's home state, and the record contains no evidence showing Georgia declined jurisdiction. Thus, South Carolina did not have jurisdiction to make an initial child custody determination pursuant to section 63–3–330 or modify a child custody decree from another state pursuant to section 63–3–334. South Carolina's only basis for jurisdiction was section 63–15–336, which allows a state to exercise temporary emergency jurisdiction. The South Carolina family court had a valid basis to exercise emergency jurisdiction at the time of the probable cause hearing; however, whether the subsequent removal order became a final order under the UCCJEA hinges upon whether another state issued a prior child custody determination entitled to be enforced under the UCCJEA. *See* § 63–15–336(B) (providing an order issued by a state exercising emergency jurisdiction can become a final order if (1) "there is no previous child custody determination that is entitled to be enforced under" the UCCJEA, (2) "a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under [s]ections 63–15–330 through 63–15–334," (3) the order "so provides," and (4) this state becomes the child's home state).

In the record on appeal, Mother submitted a 2005 order from the Pennsylvania court that could constitute a child

custody determination under the UCCJEA because it concerned visitation of Child. *See* S.C. Code Ann. § 63–15–302(3) (2010) (" 'Child custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order."). Additionally, during oral argument, counsel for Mother indicated Cobb County, Georgia, had also issued an order affecting Child. Because Mother has submitted evidence of an existing out-of-state order, DSS has the burden of proving South Carolina has jurisdiction to proceed with this action. *See Anthony H.*, 397 S.C. at 452, 725 S.E.2d at 135 ("[F]or South Carolina cases involving jurisdictional questions under the UCCJEA, if the defendant provides evidence to the court of an existing out-of-state order, the plaintiff assumes the burden of proving the new state has jurisdiction to issue the initial child custody order and the issuing state has lost or declined to exercise its jurisdiction."). DSS has not met that burden; thus, we cannot find the final order in the removal action became a final order.

We acknowledge the record contains no evidence DSS and the family court were aware of the prior orders when the removal order was issued. However, both DSS and the family court should have been aware of the potential jurisdictional issues at the time of the removal hearing. According to the removal order, the DSS caseworker testified Mother and Child had been involved with Georgia Department of Families and Children and Pennsylvania Social Services; thus, both DSS and the family court should have been aware other orders affecting Child could exist. Additionally, DSS knew Mother was a resident of Georgia. Notwithstanding all of this, DSS and the family court proceeded without attempting to establish whether South Carolina had jurisdiction under the UCCJEA. DSS had the burden of proving subject matter jurisdiction, and it did not meet that burden. In the removal order, the family court merely stated, "This court has jurisdiction over the parties and the subject matter of this action." We find the family court erred in the removal order when it summarily found it had jurisdiction.

Accordingly, we vacate the family court's removal order and TPR order. Although the orders are void for lack of subject

matter jurisdiction, we find South Carolina retains temporary emergency jurisdiction under section 63–15–336 pending the resolution of this jurisdictional issue, and we remand this to the family court to resolve the jurisdictional issue. *See Gorup v. Brady*, 399 Ill.Dec. 513, 46 N.E.3d 832, 842 (Ill. App. Ct. 2015) (vacating orders for lack of subject matter jurisdiction under the UCCJEA but maintaining temporary emergency jurisdiction pending resolution of the jurisdictional issue and remanding with instructions for the trial court to follow the temporary emergency jurisdiction procedures). On remand, the family court shall determine whether the Cobb County, Georgia order was a valid order under the UCCJEA. If so, the family court shall communicate with the court in Cobb County to "resolve the emergency." § 63–15–336(D). If Georgia declines jurisdiction, the family court shall request Georgia issue an order finding it no longer retains exclusive, continuing jurisdiction; if Georgia issues such an order, DSS may proceed to properly establish jurisdiction under the UCCJEA and initiate another removal action. *See* § 63–15–332(A)(1).

If the family court determines the Cobb County order was not a valid order under the UCCJEA, it shall then determine whether the Pennsylvania order was a valid order under the UCCJEA. If it was, the family court shall communicate with the Pennsylvania court to "resolve the emergency." § 63–15–336(D). If Pennsylvania declines jurisdiction, the family court shall request Pennsylvania issue an order finding it no longer retains exclusive, continuing jurisdiction. *See* § 63–15–332(A)(1).

Based on the foregoing, the family court's removal order and TPR order are vacated, and this action is remanded for further findings consistent with this opinion. Additionally, consistent with section 63–15–336(C), South Carolina's exercise of emergency jurisdiction over this action shall expire sixty days from the date this opinion is filed or whenever another state having jurisdiction issues an order affecting Child.

**VACATED AND REMANDED.**

LOCKEMY, C.J., and KONDUROS and MCDONALD, JJ., concur.